**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

SAM A. KENNEDY                                CIVIL ACTION NO. 24-0396

VERSUS                                        JUDGE ALEXANDER C. VAN HOOK

VILLAGE OF DELTA                              MAGISTRATE JUDGE McCLUSKY

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Village of Delta ("Defendant"). Record Document 37.  Plaintiff Sam Kennedy ("Mr. Kennedy") filed a Memorandum in Opposition (Record Documents 43 and 48 and hereinafter "Opposition"), and Defendant filed a Reply (Record Document 50 and hereinafter "Reply").  For the reasons assigned herein, Defendant's Motion is **GRANTED**.

## FACTUAL BACKGROUND

This lawsuit arises from Defendant's termination of Mr. Kennedy's employment as a law enforcement officer for Defendant.  Following military service and subsequent service in various law enforcement capacities for other local entities, Mr. Kennedy was hired by Defendant in June 2011 as a patrol officer with the title of Delta Marshal. Record Document 37-2 at 7; Record Document 48-18 at 9-13.  Mr. Kennedy reported to Chief Marshal David Beckham ("Chief Beckham") and was one of two, sometimes three, law enforcement officers employed by Defendant. Record Document 48-15 at 71; Record Document 48-18 at 14-15.  His duties included

patrolling, issuing citations, assisting other agencies and answering calls. Record Document 48-15 at 10; Record Document 48-18 at 17. While on duty or on-call, Mr. Kennedy would receive radio or cell phone calls from the Madison Parish 911 operator, Chief Beckham, or then-Village of Delta Mayor Marvin Ashley ("Mayor Ashley"), requesting that he respond to a situation. Record Document 48-18 at 17-18.

In January 2020, Mr. Kennedy was called to work a fatal truck accident on I-20 near the Village of Delta. Record Document 37-2 at 8; Record Document 48-15 at 12; Record Document 48-18 at 19. According to Mr. Kennedy, working the fatal accident was very traumatic, something he had difficulty processing, and it affected his mental health, family relationships and his job. Record Document 48-18 at 19-20. Mr. Kennedy suppressed his emotional difficulties at work until August 15, 2022 when, while working a house fire, Mr. Kennedy messaged Chief Beckham that he needed some time off to address his post-traumatic stress disorder ("PTSD") issues. Record Document 48-15 at 11-12; Record Document 48-18 at 19-20. The record is conflicting as to whether Mr. Kennedy had been previously diagnosed with PTSD. At one point he says 2022 was his first diagnosis, Record Document 48-18 at 19, but at another he states he had previously been put on medication in 2014 for PTSD from his prior military experience, Record Document 48-18 at 31. Regardless, at no point prior to August of 2022 did Mr. Kennedy inform Defendant he was having emotional difficulties, though he did tell Chief Beckham in personal conversations. Record Document 48-18 at 31-32.

Mr. Kennedy requested and was given two weeks off by Mayor Ashley to go to a VA hospital for diagnosis, with the understanding that he would be charged vacation time for the time off unless he obtained written documentation of a PTSD diagnosis. Record Document 48-15 at 13-14. Mr. Kennedy returned with such documentation and the hospital's recommendation that Mr. Kennedy attend regular telehealth sessions. Record Document 48-15 at 19-20; Record Document 48-18 at 33. Mr. Kennedy requested both time to participate in the telehealth sessions during his working shifts, and also that Mayor Ashley file a workers' compensation claim, apparently in the belief that working the fatal truck accident over two years earlier had triggered his need for treatment. Record Document 48-18 at 40-41.

Mayor Ashley agreed to Mr. Kennedy's request to participate in the therapy sessions during working shifts and said he would investigate filing a workers' compensation claim.  Record Document 48-15 at 17.  However, no such claim was filed and over the following weeks Mr. Kennedy was called to service during his therapy sessions, with Mr. Kennedy sometimes interrupting the session and other times not answering the call. Record Document 48-15 at 20-22; Record Document 48-18 at 48-49.

In March 2023, Mayor Ashley called a meeting with the Village's Board of Aldermen and Mr. Kennedy to discuss Mr. Kennedy's work performance, which Mayor Ashley alleged had become unsatisfactory due to writing too few citations and not being available when called to service. Record Document 48-15 at 25-26; Record Document 48-16 at 71; Record Document 48-18 at 42. The aldermen were unaware of

3

Mr. Kennedy's alleged work-related PTSD condition or his request that a workers' compensation claim be filed.  Record Document 48-18 at 42, 54. Mayor Ashley again agreed to look into making a workers' compensation claim and to permit Mr. Kennedy to participate in the telehealth sessions. Record Document 48-18 at 54. However, no such claim was ever filed and Mr. Kennedy continued to receive radio and phone calls during his telehealth sessions requesting him to respond to calls. Record Document 48-18 at 44-46, 48.

On or about June 15, 2023, Mayor Ashley called a meeting with Chief Beckham and Mr. Kennedy, at which meeting Mayor Ashley told Mr. Kennedy they were there to discuss Mr. Kennedy's termination. Record Document 48-16 at 94-95; Record Document 48-18 at 56-57. Mr. Kennedy became emotional and threatened suicide, while using abusive language towards Mayor Ashley and accusing him of disreputable acts. Record Document 48-15 at 52; Record Document 48-16 at 94-95; Record Document 48-18 at 57-58. In response, Mayor Ashley rescinded Mr. Kennedy's termination and told him to take 30 days' paid leave to "figure this out." Record Document 48-15 at 52, 61-63; Record Document 48-16 at 94-95, 130-131; Record Document 48-18 at 59.

Less than two weeks later, Mayor Ashley delivered a written termination notice to Mr. Kennedy along with Mr. Kennedy's weekly paycheck. Record Document 48-16 at 118-119; Record Document 48-18 at 59. Following some discussion, Mr. Kennedy submitted a letter of resignation, allegedly at the request of Mayor Ashley as a *quid pro quo* for providing Mr. Kennedy with a letter of recommendation for

future employment. Mr. Kennedy never received that letter of recommendation. Record Document 48-18 at 61. Since there is no evidence in the record that the termination letter was ever rescinded, the Court will proceed on the assumption that Mr. Kennedy was terminated rather than resigned.

Following his termination, Mr. Kennedy filed this action alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12201 *et seq.*, which incorporates, through 42 U.S.C.A. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201-219, and several Louisiana state statutes, *viz*, LA. REV. STAT ANN. § 23:331, LA. REV. STAT ANN. § 23:631, and LA. REV. STAT ANN. § 51:2256.[1]  In his Opposition, Mr. Kennedy raises for the first time allegations that Defendant also violated the Rehabilitation Act, 29 U.S.C.A. § 794. Record Document 43 at 7-8, 19-21. That claim was not included in Mr. Kennedy's original Complaint and Mr. Kennedy has not sought leave to amend that Complaint to add any such claim. Accordingly, it is not properly before this Court and will not be considered here.  *BCC Merchant Solutions, Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 458 (N.D. Tex. 2015)("claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly

---

[1] Also following his termination Mr. Kennedy requested that he be paid for two-weeks of accrued vacation time, and for a week of pay that was allegedly withheld from all employees in 2020 due to financial constraints related to the COVID epidemic. Record Document 48-18. pp. 67-79.  Defendant disputes that such payments are due, and Mr. Kennedy subsequently filed an action in Louisiana state court seeking those payments. Record Document 48-18, p. 80.  That case remains pending while this federal litigation proceeds, and Mr. Kennedy makes no claim for such payments in this case. Record Document 1 ("Complaint").

before the court")(quoting *Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

**LAW AND ANALYSIS**

**A.    Summary Judgment Standard.**

The law pertaining to summary judgment is well settled.  Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the non-movant must present evidence sufficient to establish the existence

6

of each element of its claim as to which it will have the burden of proof at trial. *Id.* at 322.

**B.    Analysis.**

As Defendant points out in its Motion and Reply, both the ADA and the FLSA are limited in scope, with certain exceptions to their applicability. Of importance here, each act does not apply to very small employers and the FLSA does not apply to certain law enforcement employees. Those threshold applicability limitations must be addressed before turning to the merits of Mr. Kennedy's allegations, as it is beyond peradventure there can be no violation of an act if that act does not apply to the Defendant.[2]

**1.  Americans with Disabilities Act/Title VII.**

Section 2000e(b) of Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person …."  The question presented thus becomes did the Village of Delta employ 15 or more employees for the required amount of time during 2023 and 2022?

In its Motion and Reply, Defendant maintains that its number of employees never came close to 15 during calendar years 2023 and 2022, citing the affidavit of Village Clerk Susan Peterson. Record Document 37-2 at 17-18; Record Document 50

---

[2] It is important to note that these scope limitations are not jurisdictional, and must be timely raised by a defending party as affirmative defenses to be considered by a court.  *See Arbaugh v. Y&H Corporation*, 546 U.S. 500, 515-16 (2006)(citing *Zipes v. Trans World Airlines*, 455 U.S. 385 (1982)). Here, Defendant timely raised the defenses in its Motion and Reply.

at 3-4. Mr. Kennedy alleges that, when all the people performing work for Defendant are included, the number of Defendant's employees at some point equaled or exceeded 15. Record Document 43 at 5-6.

First, Mr. Kennedy alleges that Defendant's CPA and attorney must be considered as employees, while Defendant maintains they are third party vendors and independent contractors. What constitutes an "employee" for purposes of the ADA or other provisions of Title VII has been the subject of much litigation over the years. *See, e.g., Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003); *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *Walters v. Metropolitan Educational Enterprises, Inc.* 519 U.S. 202 (1997); *Deal v. State Farm County Mutual Insurance Company of Texas*, 5 F.3d 117 (5th Cir. 1993); *McCarty v. Southland Builders & Associates Inc.*, 2007 WL 963202 (W.D. La. 2007). The Fifth Circuit employs the "hybrid economic realities/common law control test" to distinguish between employees and independent contractors. *Deal*, 5 F.3d at 118-119. "When examining the [right to] control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* at 119 (citing *Mares v. Marsh*, 777 F.2d 1065 (5th Cir. 1985)). "The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.*

Here, Mr. Kennedy presents no probative evidence establishing that the CPA or the attorney qualified as employees under the Fifth Circuit's hybrid economic realities/common law control test, he merely asserts that Defendant consistently employs such persons for their services. Record Document 43 at 5. Allegations, without more, are insufficient to survive summary judgment. *Deal v. Outback Steakhouse of Florida, LLC*, 2021 WL 3577003, at *3 (W.D. La. 2021) ("It is well established that conclusory allegations unsupported by specific facts will not preclude summary judgment and that Plaintiff cannot rest on mere allegations for her claim to move forward without any significant probative evidence tending to support the complaint.") (internal citations and quotations omitted).

Next, Mr. Kennedy alleges that various additional persons were hired at various times during the 2023 and 2024 fiscal years used by Defendant, thus raising the total number of Defendant's employees. First, that allegation is inapposite, as the ADA and Title VII do not use fiscal years, the definition of employer specifically states that the relevant time period is "the current or preceding calendar year;" here, calendar years 2023 and 2022. Second, and most importantly, to establish that the ADA applies to Defendant, Mr. Kennedy must affirmatively establish by competent summary judgment evidence that Defendant employed at least 15 employees for each working day in each of 20 or more weeks during 2023 and 2022. In his Opposition, Mr. Kennedy never quantifies exactly how many employees Defendant had at any given time, he merely speculates that when all of the bodies are added up, at some point there were at least 15. As *Deal* establishes, that speculation falls short of the

9

proof needed to establish that the ADA applies to Defendant. Absent a sworn affidavit, declaration, or other competent evidence that affirmatively establishes that Defendant employed at least 15 employees for each working day in each of 20 or more weeks during 2023 and 2022, he cannot satisfy the numerosity threshold requirement of Title VII. The ADA and Title VII are thus not applicable to Defendant and that claim is precluded.

### 2. Fair Labor Standards Act.

In his Complaint, Mr. Kennedy alleged a violation of Section 213(b)(2) of the FLSA. Record Document 1 at ¶2. That provision pertains to railroad employees, so it is unclear exactly what he was pleading or how that provision would apply to him. Later in his Complaint, he avers that "Defendant has violated the FLSA by requiring Mr. Kennedy to work more than the required amount of hours as a non-exempt employee without pay and showed disregard to whether its compensation was in [sic] prohibited by law." Record Document 1 at ¶36.

Mr. Kennedy claims that his work schedule exceeded the maximum hours permitted under Section 207 of the FLSA, pertaining to maximum hours and overtime pay, without being paid any overtime. However, Section 213(b)(20) of the FLSA specifically states that the provisions of Section 207 do not apply to "any employee of a public agency who in any workweek is employed … in law enforcement activities … if the public agency employs during the workweek less than 5 employees in … law enforcement activities…."[3]

---

[3] The provision's language pertaining to fire department personnel has been deleted for simplicity and clarity.

The record is very clear that at no time did Defendant employ five or more law enforcement employees. Beyond Chief Beckham, there were never more than two Delta Marshals at any given time, and for the majority of the period at issue here, Mr. Kennedy and Chief Beckham were the only Delta Marshals. Record Document 48-15 at 65, 69-70; Record Document 48-18 at 15. Thus, the 213(b)(20) exemption bars Mr. Kennedy's excessive work hours claim under Section 207.

In his Opposition Mr. Kennedy does not allege otherwise; instead, he avers that, even if the Section 207 exemption applies, he was not compensated properly under Section 206 of the FLSA pertaining to minimum wages, because the hours he was required to be available, on duty and on call, meant that his pay amortized over all of those hours did not meet minimum wage requirements. Record Document 43 at 14-16.

As noted above, in his Complaint Mr. Kennedy alleged that Defendant violated the FLSA by "requiring Mr. Kennedy to work more than the required amount of hours as a non-exempt employee without pay." Record Document 1 at ¶36. A Section 207 claim pertaining to allegedly unpaid overtime can be discerned from that language, and Mr. Kennedy himself alleges in his Complaint that he was not paid overtime he claims he was due (Record Document 1, ¶¶21-23), but even a liberal reading of Mr. Kennedy's Complaint fails to discern a Section 206 claim. *i.e.*, a short and plain statement that his total hours at work and on-call resulted in his actual hourly wage being below statutory minimum wage. *See* FED R. CIV. PROC. 8(a)(2)(a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled

11

to relief"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the defendant-unlawfully-harmed-me accusation.")(quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)). Somewhere in his Complaint he had to put Defendant on notice that he was making such a claim, and to present some minimal factual statement establishing both the violation and how he is entitled to relief. Further, and as noted previously, a claim cannot be first raised in an opposition to a motion for summary judgment. *BCC Merchant Solutions, Inc.*, 129 F.Supp.3d at 458. Even if the Court were willing to entertain a Section 206 argument, in his Opposition he fails to submit a sworn affidavit, declaration or other probative evidence establishing the math showing that his effective hourly wage was below statutory minimum wage, and again mere allegations and speculation are insufficient to survive summary judgment. *Deal,* 2021 WL 3577003, at *3. Accordingly, Mr. Kennedy's Section 206 and 207 claims are precluded and summary judgment for Defendant is warranted.

### 3.  State Law Claims.

All of Mr. Kennedy's federal causes of action being dismissed on summary judgment, and recognizing that the parties already have an open case in state court that will resume following these proceedings, the Court declines to exercise supplemental jurisdiction over Mr. Kennedy's state law claims and dismisses those claims without prejudice, leaving Mr. Kennedy, in his sole discretion, to pursue those claims in the state court proceeding.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' motion for summary judgment, Record Document 37, is **GRANTED**. All of Mr. Kennedy's federal claims filed against Defendants in this matter are **DISMISSED WITH PREJUDICE**. All of Mr. Kennedy's state law claims against Defendant in this matter are **DISMISSED WITHOUT PREJUDICE**.

**DONE AND SIGNED** in Shreveport, Louisiana, this 26th day of May, 2026.


**ALEXANDER C. VAN HOOK**
**UNITED STATES DISTRICT JUDGE**